Somerset County Court of Common Pleas.

JEANNETTE CARPENTER, PETITIONER-APPELLEE, v. CALCO CHEMICAL DIVISION OF THE AMERICAN CYANAMID COMPANY OF BOUND BROOK, RESPONDENT-APPELLANT.

Decided September 22, 1947.

432

For the respondent-appellant, *Wharton & Hall* (*Frederick W. Hall* and *William T. Stewart, Jr.,* of counsel).

For the petitioner-appellee, *Louis Steisel* (*Elsie L. White,* of counsel).

SMITH, ARTHUR B., C. P. J. This is an appeal from a determination and award of compensation by the Workmen's Compensation Bureau.

The decedent, Austin V. Carpenter, was employed by the respondent-appellant on Friday, July 10th, 1942, and first reported for work on the following Monday, July 13th, 1942. He continued to work until July 20th, 1942, on which date, while walking to his car to return home, after he had completed his days work and had taken a shower, he became suddenly ill. He was still on his employer's property and returned to the medical department maintained by his employer. He was attended immediately (about 4:30 P. M.) by the physician then in charge. He was put to bed and given medical attention, but died at 5:50 P. M.

On July 15th, 1944, almost two years after the decedent's death, his widow, the petitioner herein, filed a claim for compensation on behalf of herself and her 15-year-old daughter. In her claim petition she stated, as to the nature and happening of the alleged accident, that "while the petitioner's decedent was doing heavy, unusual and strenuous work he became sick, from which illness he died." The petition does not allege, except by inference, that the alleged sickness and subsequent death were either results of or contributed to by the claimed heavy, unusual and strenuous work; nor does it offer any enlightenment as to the nature of the alleged sickness or the cause of death. However, the death certificate which was admitted in evidence gives the cause of death as "coronary occlusion." The record indicates that at the hearing before the Deputy Commissioner of Labor the parties

proceeded on the theory that the petitioner claimed to be entitled to compensation on the ground that the alleged heavy, unusual and strenuous work done by the decedent in the discharge of the duties of his employment by the respondent-appellant either directly caused, or contributed to his heart failure and resulting death. This theory was vigorously disputed by the respondent-appellant.

The Deputy Commissioner of Labor by whom the case was heard, in the first sentence of his conclusions, said: "it would seem that the only thing in issue is that of causal connection between the decedent's employment and his death from coronary occlusion." Although taking some pains to decline to reveal the mental processes by which he reached his conclusion (R. 196), he concluded (R. 200) "that the petitioner's decedent did, on the 20th day of July, 1942, sustain injuries by reason of an accident arising out of and in the course of his employment with the respondent * * * and that this injury consisted of a heart failure that the doctors described as coronary occlusion * * *." Based upon this conclusion he awarded compensation to the petitioner.

Did the petitioner in this case sustain the burden of proving that the coronary occlusion which resulted in her deceased husband's death was in consequence of an injury by accident which arose out of and in the course of his employment with the respondent company, within the intendment of *R. S.* *34:15-7, et seq.; N. J. S. A.* 34:15-7, *et seq.?* The inquiry is whether the death is causally related to strain or exertion arising from the doing of the master's work. *Lohndorf* v. *Peper Bros. Paint Co.,* 135 *N. J. L.* 352, 354; 52 *Atl. Rep.* (*2d*) 61. The rule, stated in *Bryant* v. *Fissell,* 84 *N. J. L.* 72; 86 *Atl. Rep.* 458, and running on down through the decisions, is that in workmen's compensation cases the burden of proving that the death was caused by an accident rests upon the claimant. *Ten Eleven Corp.* v. *Brunner,* 135 *N. J. L.* 558, 563; 53 *Atl. Rep.* (*2d*) 350. To justify an award of compensation there should be a clear preponderance of the proofs in favor of the claimant. *Ten Eleven Corp* v. *Brunner,* 135 *N. J. L.* 560; 53 *Atl. Rep.* (*2d*) 350. A bare possibility of causal relationship between the effort attending the doing

of the decedent's work and the coronary occlusion which caused his death does not meet the legal standard of proof and discharge the *onus* of proof which the law places upon a claimant. *Lohndorf* v. *Peper Bros. Paint Co.*, 135 *N. J. L.* 352, 358; 52 *Atl. Rep.* (*2d*) 61. Our Court of Errors and Appeals, in *Fusco* v. *Cambridge Piece Dyeing Corp.*, 135 *N. J. L.* 160, 163; 50 *Atl. Rep.* (*2d*) 870, suggests that doubt, resulting from an absence of convincing testimony, requires a denial.

There is a presumption that any death from heart disease is the result of natural causes; the *onus* is on the claimant to establish that the asserted accident was at least a contributory cause without which the occlusion would not have occurred. *Joseph Dixon Crucible Co.* v. *Law*, 135 *N. J. L.* 528; 53 *Atl. Rep.* (*2d*) 215; *Ten Eleven Corp.* v. *Brunner, supra; Lohndorf* v. *Peper Bros. Paint Co.*, 134 *N. J. L.* 156, 159; 46 *Atl. Rep.* (*2d*) 439; *affirmed*, 135 *N. J. L.* 352; 52 *Atl. Rep.* (*2d*) 61.

It is a matter of common knowledge that heart disease is near the top, if not actually there, of the list of diseases arranged in numerical order of deaths produced. Many more sufferers from hypertension and arteriosclerosis die from heart failure than from hemorrhage; and of the deaths from cerebral hemorrhage, some are related to strain and some are not. So that industry may not be burdened with a load not chargeable to it, we are under the duty to scrutinize the evidence carefully lest disability consequent upon disease alone be made the basis of an award. *Ten Eleven Corp.* v. *Brunner*, 135 *N. J. L.* 558, 564; 53 *Atl. Rep.* (*2d*) 350; *Joseph Dixon Crucible Co.* v. *Law, supra; Schlegel* v. *H. Baron & Co.*, 130 *N. J. L.* 611; 34 *Atl. Rep.* (*2d*) 132.

Of course, there may be a compensable injury where there is an accidental strain of the heart, even though the heart was previously weakened by disease, if the accident arose out of and in the course of the employment. *Bernstein Furniture Co.* v. *Kelly*, 115 *N. J. L.* 500; 180 *Atl. Rep.* 832; *Molnar* v. *American Smelting and Refining Co.*, 128 *N. J. L.* 11; 24 *Atl. Rep.* (*2d*) 392; *Swift & Co.* v. *Von Volkum*, 131 *N. J. L.* 83; 34 *Atl. Rep.* (*2d*) 897; *Lohndorf* v. *Peper Bros. Paint Co., supra.* However, because an employee continues

his occupation when he should rest and because of continuing his employment, and while engaged in discharging the duties thereof, or shortly thereafter, suffers a heart failure, from which he is disabled or dies, does not of itself form a basis for compensation. To hold otherwise is to constitute an employer an insurer of the health and life of his employees and the law has not yet enlarged the employer's burden to this extent. *Lohndorf* v. *Peper Bros. Paint Co., supra.*

The words "accident" and "employment" are not synonymous. To render an injury compensable under the Workmen's Compensation Act there must be an event or happening, beyond the mere employment itself, which brings about the final result or contributes thereto, and without which the injury or death would not have resulted. *Lohndorf* v. *Peper Bros. Paint Co., supra; Joseph Dixon Crucible Co.* v. *Law, supra.*

What was the "event or happening beyond the mere employment itself," within the interpretation of these terms by our courts, which brought about the "coronary occlusion" resulting in the death of the petitioner's deceased husband, and without which this result would not have occurred?

After carefully scrutinizing and appraising all of the testimony in the light of the foregoing principles now firmly established in our law, it cannot, with good conscience, be said that the petitioner has successfully borne her burden by proving, by a clear preponderance of the credible evidence, that there was a reasonable probability of a causal relationship between the effort attending her deceased husband's performance of the duties of his employment by the respondent-appellant and the "coronary occlusion" which caused his death. The evidence intended to prove an "event or happening"—an "accidental strain" of the heart from unusually hard labor on the day in question—is not weighty and persuasive. The medical testimony offered on behalf of the petitioner is not convincing. The standard of proof is probability and the petitioner's proofs do not meet that standard.

The Deputy Commissioner, in his conclusions (R. 197), indicated a confusion existed in the testimony as to the nature of the work performed by the decedent on the day of his death and stated that "In fact, it is impossible for me to say * * *

why there should be any discrepancy in the description of the work." In view of this statement, it is most difficult to understand how the Deputy Commissioner could have concluded that the clear preponderance of the evidence favored the petitioner. In stating his recollection of the testimony of the decedent's superintendent or supervisor (James Abercromby) he indicates that he testified the job on which the decedent was engaged "took just twice as long as ordinarily that day and they had to stop from time to time," concluding that this inferred that "the work was not at all light in character." Actually Abercromby testified (R. 93) that the work Carpenter was doing on the day in question "wasn't heavy work" and that it was "lighter than they usually do." The witness Stow, a fellow employee who worked with the decedent, described the job as "light" (R. 122). It seems apparent from reviewing all of the testimony that petitioner's witnesses Gallian and Horn were not only uncertain and confused in their testimony but that they were definitely mistaken in their recollections as to the work in which Carpenter had been engaged on the date of his death. This is borne out by the record produced by the witness Abercromby and also by the fact (stipulated by counsel, R. 194) that Horn told Mr. Hutchinson on the morning following Carpenter's death that on the previous day they had been engaged in the work testified to by all of the respondent's witnesses, which was quite different from the work mentioned by Horn while on the witness stand. The witness Gallian did not work with the same crew and his testimony is entitled to little if any weight. It is quite apparent from reviewing the testimony of both the witnesses Gallian and Horn on cross-examination that neither of them were reasonably certain of their statements. The testimony of the witnesses Abercromby, Stow and Brown is much more positive and convincing and it has the support of the work record of the witness Abercromby and the statements made to Mr. Hutchinson the morning following Carpenter's death. According to the witnesses whose testimony appears to be the more reliable, Carpenter does not appear to have done any work on the day of his death which could possibly be considered heavy or such as might reasonably be thought capable of producing a heart

strain. The job was finished about 3:30 P. M. and the crew sat around to watch for leaks (R. 123). They all fooled around squirting a hose at each other, including Carpenter (R. 136). Neither Abercromby, Stow nor Brown noticed anything unusual about Carpenter during the day and he made no complaints to either of them. Stow and Carpenter had adjoining lockers (R. 137). Brown saw him in the locker room after their shower following the completion of their day's work (R. 143). Abercromby spoke to him in the locker room after he had finished his shower. He noticed nothing wrong with him and in response to a passing question by Abercromby, Carpenter said "I feel all right" (R. 94, 112).

The petitioner failed to prove by a clear preponderance of the evidence that the decedent, on the day of his death, met with any such unusual incident or exerted any such effort or strain in discharging the duties of his employment as to be denominated an accident. The doctors who testified in the petitioner's behalf were not attending physicians. Their opinions and conclusions were based upon purely hypothetical questions and upon the assumption that the decedent had performed heavy, strenuous labors and exerted unusual effort on the day of his death. Since the evidence does not fairly support such an assumption, no weight can be given to the conclusions of these "experts" who concluded that the coronary occlusion was caused or contributed to by unusual exertion and strain. Carpenter became suddenly ill and died shortly after completing his day's work and this, it seems, is the most that could be said. From all of the evidence, it cannot fairly be said that the decedent's death from the coronary occlusion would not have happened but for his employment.

Since the petitioner has failed to sustain the burden of proving, by the greater weight of the credible evidence, that there was a causal relationship between the effort attending the doing of the decedent's work and the coronary occlusion which resulted in his death, the determination and rule for judgment of the Workmen's Compensation Bureau awarding compensation to the petitioner must be reversed and judgment entered in favor of the respondent-appellant.